```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF TEXAS
 2                          DALLAS DIVISION

 3   UNITED STATES OF AMERICA      )  CAUSE NO. 3:13-CR-446-P
                                   (
 4   vs.                           )
                                   (  DECEMBER 10, 2014
 5                                 )  DALLAS, TEXAS
     WAYNE JOSEPH SWEENEY          (  1:30 P.M.
 6   _____

 7

 8   _____

 9                           SENTENCING

10
                  BEFORE THE HONORABLE JORGE A. SOLIS
11                   UNITED STATES DISTRICT JUDGE

12   _____

13
                         A P P E A R A N C E S
14

15
         FOR THE GOVERNMENT:    UNITED STATES ATTORNEY'S OFFICE
16                              1100 COMMERCE, 3RD FLOOR
                                DALLAS, TEXAS  75242
17                              (214) 659-8600
                                BY:  MR. GEORGE LEAL
18
         FOR THE DEFENDANT:     LAW OFFICE OF LARRY FINSTROM
19                              1201 ELM STREET, SUITE 2510
                                DALLAS, TEXAS  75270
20                              (214) 748-5855

21                              LAW OFFICE OF CARL R. DAY
                                2121 W. AIRPORT FWY, SUITE 210
22                              IRVING, TEXAS  75062
                                (972) 870-0816
23
         OFFICIAL COURT REPORTER:  SHAWN M. McROBERTS, RMR, CRR
24                              1100 COMMERCE STREET, RM. 1654
                                DALLAS, TEXAS  75242
25                              (214) 753-2349
```

1              THE COURT:  Is Mr. Day back?  Have you finished with
2     Judge --
3              MR. DAY:  They told me to come here.
4              THE COURT:  Come here first?  Okay.  All right.
5         Case No. 3:13-446-P, United States versus Wayne Sweeney.
6              MR. LEAL:  Good afternoon, Your Honor.  George Leal
7     for the United States.
8              THE COURT:  Mr. Leal, good afternoon.
9              MR. DAY:  Carl Day and Larry Finstrom for the
10    Defense, Your Honor.
11             THE COURT:  Mr. Finstrom and Mr. Day.
12        And you are Wayne Joseph Sweeney?
13             THE DEFENDANT:  Yes, Your Honor.
14             THE COURT:  And Mr. Sweeney, you appeared on
15    February the 18th, earlier this year, 2014, before Magistrate
16    Judge Ramirez.  You entered a plea of guilty to a one-count
17    indictment that accuses you of conspiracy to distribute a
18    controlled substance analogue.
19        We are now here on a sentencing hearing, and the
20    Probation Office has prepared a presentence report.  And have
21    you had the opportunity to review that report with your
22    attorneys?
23             THE DEFENDANT:  Yes, Your Honor.
24             THE COURT:  You understand all of the information in
25    these reports?

1          THE DEFENDANT:  Yes, sir, I do.
2          THE COURT:  And counsel, you have gone over the
3  presentence report with your client and explained the
4  presentence report to him?
5          MR. FINSTROM:  We have, Your Honor.
6          THE COURT:  And you are satisfied that Mr. Sweeney
7  understands all of the information in these reports.
8          MR. FINSTROM:  We do, Your Honor.
9          THE COURT:  Okay.  And you have filed no objections
10 to the presentence report.  Is that correct?
11         MR. FINSTROM:  All of our concerns about the
12 presentence report were encompassed in the 11(c)(1) agreement,
13 Your Honor.
14         THE COURT:  Okay.  And then, Mr. Leal, I believe you
15 also have no objections.  You filed a written statement
16 indicating you had no objections.  Is that still your
17 position?
18         MR. LEAL:  That is correct, Your Honor.
19         THE COURT:  And then I have also received your
20 motion for downward departure, 5K, and then your supplemental
21 motion for downward departure.
22      Before we get there, let me go ahead and accept the
23 findings of the Probation Office as contained in the
24 presentence report.  I will adopt those as the findings of the
25 Court in this case.

1          And, according to the presentence report, the offense

2     level the 41, the Criminal History Category is V, the

3     Guideline range is 360 months to life.  There is an

4     11(c)(1)(C) agreement for a sentence not in excess of 120

5     months, and that is before consideration of the Government's

6     5K.

7          And then also, Mr. Day and Mr. Finstrom, I have received

8     your motion to reduce the offense level by two levels pursuant

9     to the new amendments.  I believe the Probation Office -- Did

10    they not take that into account?

11              MR. FINSTROM:  No, Your Honor.

12              THE COURT:  All right.

13              THE PROBATION OFFICER:  Your Honor, if it is over --

14    if it is still a level 38, he would not benefit --

15              THE COURT:  Would not make a difference.  Okay.

16              THE PROBATION OFFICER:  Correct.

17              MR. FINSTROM:  Your Honor, I quoted that *Freeman*

18    case in our motion, and there are some other cases, two

19    Supreme Court cases, and there just was a case that came out

20    December the 3rd out of the Seventh Circuit, there hasn't been

21    anything else come out, but the Supreme Court cases on that

22    crack cocaine reduction said that where there is a base

23    offense level 11(c)(1), the Court accepts the 11(c)(1), that

24    the 11(c)(1) is a consideration of the Sentencing Guidelines

25    and the two points come off the 11(c)(1), they don't come off

1  the base offense level.  All of the case law, because it
2  started on November 1st, is regarding crack cocaine cases, but
3  I can't find any reason that the 780 amendment wouldn't be
4  applied in the same way as they applied the crack cocaine
5  cases, and we would argue to the Court that Wayne is entitled
6  to the two points off of the 11(c)(1) off of the 5K1, as we
7  outlined in our motion.
8            THE COURT:  Okay.  Any position on that?
9            MR. LEAL:  Judge, the Government's position would be
10 that under the Guidelines as they existed before November 1st,
11 2014, the base offense level was a 38, because the amount
12 actually calculated or translated into marijuana from the
13 synthetic cannabinoids is approximately 120,000 pounds of
14 marijuana -- 120,000 kilograms of marijuana, as set out in
15 paragraph 33.  It was a 38 before, it remains a 38, so the
16 Government's position is that particular case law doesn't
17 apply here.
18            THE COURT:  Anything else on that?  That appears to
19 be correct.  And ultimately if I grant the 11(c)(1)(C) then
20 you are going to get the benefit of that in any event.
21           MR. FINSTROM:  If the Court wants to read *Freeman* or
22 *Dorsey* or the case that came out December the 3rd, I have
23 them, Your Honor.
24           THE COURT:  If you will leave them with Kevin, I
25 will take a look at those.

1    Mr. Leal, then -- So the offense level is 41.  The base

2 offense level the 38, but the offense level is 41, so it would

3 come down to a 39 if we took that off, if we applied those.

4 But you filed your motions for downward departure.  I will

5 hear from you on those.

6          MR. LEAL:  Judge, based upon the original motion

7 that I filed, which contains information I don't want to go

8 into here, I would ask, first off, that the Court follow the

9 plea agreement, the 11(c)(1)(C) plea agreement, and find that

10 that is an appropriate plea agreement of 120 months.  And then

11 based on the supplemental motion, Your Honor, I would ask that

12 the Court grant the Defendant an additional 12 months downward

13 departure and sentence him to 108 months, Your Honor.

14          THE COURT:  Okay.  Thank you.

15      Anything on that?

16          MR. FINSTROM:  Your Honor, this, I think, was the

17 first synthetic cannabis bust in Dallas County.  There has

18 been a series of them since then.  Wayne was relying on the

19 legality of the sales under state law.  All of the sales were

20 made on his cash register.  There was a tab on them, there was

21 a record for the Government to determine what he sold, there

22 has been a forfeiture, substantial multi-million dollar

23 forfeiture which roughly corresponds to what his benefit was

24 out of selling the stuff.  He has provided all the information

25 regarding where he bought the stuff.  He has assisted the

1  Government in some investigations that resulted in the 5K1.

2  You know, Wayne told us, told the Government, told the

3  police I think when he got arrested, if anybody would have

4  told me it was illegal, I would have quit selling it.  And it

5  is an unusual situation in that I think there are very few

6  drug conspiracies where I felt that the forfeiture in any way

7  approximated what the benefit was to the Government.  That is

8  probably one of the problems with drug cases.

9  We would ask the Court to consider in this case that with

10  the forfeiture, that he has had a substantial attempt to bring

11  the Government back to the position they were before the

12  offense occurred, and it leaves him basically without funds,

13  although he is still operating his business.

14  I think that all the people that are in the courtroom now

15  are support people for Wayne.  He has a substantial number of

16  people in the community he is interested in.  Some of the

17  people are from churches that he has helped.  All of that has

18  been submitted to you in letters.

19  THE COURT:  And I have received those letters and I

20  have read the letters.

21  MR. FINSTROM:  And we would just ask the Court to

22  consider that in making a determination about what the proper

23  sentence is.

24  THE COURT:  Okay.  Mr. Sweeney, anything you wish to

25  state?

1          THE DEFENDANT:  Yes, Your Honor.

2          Your Honor, family, and friends, I am very sorry for

3     having put all of you through this process.

4          I would like to apologize to the Court for having to

5     spend the hard-working taxpayers' dollars on behalf of the

6     United States government.  I was raised on welfare and put

7     myself through college and it was not easy.

8          For the past six plus years I have been dry and sober

9     from the demon I allowed to dictate my life and that has been

10    alcohol.  I have accomplished many things since I stopped

11    drinking.  I own and operate four retail outlets for the past

12    nine years and I employ 11 great people.

13         I moved to Mexico five and a half years ago and have made

14    Cancun my permanent home, and this is where I will return.

15         I have made it a practice to live a clean and productive

16    lifestyle since becoming alcohol free.  And I have been able

17    to give back by helping several individuals start up their own

18    small businesses in Mexico and countless others who needed a

19    hand up to start their life on a productive course themselves.

20         I cannot find the words to even remotely express how I

21    regret more than anything ever getting involved with the sale

22    of this product.  My company prior to -- My company has been

23    profitable for many, many years prior to taking the decision

24    to sell this product.  I have had all my property taken from

25    me with a combined value that exceeds $7 million.  I am almost

1  bankrupt.  Making a decision to sell this product from my
2  retail store has proven to be the single worst decision I have
3  ever made in business and I would never do it again.  It was
4  for 15 months out of nine years of owning and operating a very
5  profitable company without the sale of this product.
6       In addition to everything that has been taken from me,
7  just over a year ago my mother suffered a heart attack and has
8  never fully recovered.  It is my biggest fear, Heaven forbid,
9  something should happen to her while I am locked up.  I would
10 never forgive myself.  I account for 60 percent of my mother's
11 financial support and she relies on my assistance.
12      It has not been ordered by the Court, however I pay $750
13 a month support for my minor daughter.  I also file and pay my
14 government taxes.  As a result of having $4.3 million in
15 liquid assets seized, I am left with a $1.7 million tax
16 liability on the seized money.
17      On behalf of my family and everyone who cares and
18 supports me, I ask you to please, please show me leniency as
19 you impose my sentence today.
20      Thank you.
21           THE COURT:  Thank you.
22      Mr. Leal?
23           MR. LEAL:  Your Honor, as the Court has before it, I
24 certainly don't dispute that Mr. Sweeney has been cooperative,
25 as noted in the motions that the Court has before it.  I think

1  if the Court looks at the Footnote No. 1, the Court can gather
2  that the Government anticipates that Mr. Sweeney will continue
3  to cooperate.
4       The only response I have, Your Honor, in regards to the
5  sales of the particular product, there was testimony at the
6  preliminary detention hearing that some of this product
7  actually -- the product was actually kept under the counter
8  out of view of people that were the buying public, and so you
9  had to kind of go there and ask for it and they would pull it
10 out from underneath the counter.  And the question that the
11 Government had for at least one of the witnesses that
12 testified was, if you knew the product was legal, why are you
13 keeping it under the counter.  That is tantamount to basically
14 if you have Apple computers and iPods, and that is how you are
15 making your money and you have got those hidden away, there is
16 no way for people to know you are selling them.
17      But regardless of that, Your Honor, I will stand by the
18 Government's motions and will tell the Court that I think that
19 is an appropriate sentence in this particular case, the
20 11(c)(1)(C) and then the downward departure requested, Your
21 Honor.
22           THE COURT:  Okay.  Thank you.
23      Mr. Finstrom, anything else?
24           MR. FINSTROM:  Your Honor, even though the stuff may
25 have been under the counter, there is no question the

1  customers knew he had it.  There were big signs up on the wall
2  saying he was selling legal cannabis, and I don't think he was
3  attempted to hide the fact that he was selling it.  I think it
4  was well known.  And unfortunately, you know, he had a line of
5  people coming in to buy it because they knew it was there.  So
6  I don't think there was any need to hide it.  Wayne is saying
7  he also did substantial advertising.
8      But we feel like he has recompensed the Government
9  substantially for what happened, and we just ask to consider
10 the -- you know, under the 5K1 stuff, he did some really
11 substantial stuff on behalf of the Government, and consider
12 that --
13          THE COURT:  And he has, as is contained in the
14 motion.  But, on the other hand, he has gotten a significant
15 reduction.  I mean, his minimum under the Guidelines is 360
16 months.  You are down to 108 months.  So you have received,
17 certainly a lot of consideration from the Government in
18 exchange for your substantial assistance.  You have provided a
19 significant amount of assistance.  And as Mr. Leal pointed
20 out, potentially a Rule 35 motion still that we will deal
21 with.
22      I will accept the 11(c)(1)(C) agreement and find that the
23 agreement is reasonable in this case, even though it is a
24 significant reduction from the Guideline range, in light of
25 the substantial assistance you have rendered to the Government

1  in this case.
2      I have accepted the agreement, then, and it will be the
3  judgment of the Court that you be sentenced to the custody of
4  U.S. Bureau of Prisons, Mr. Sweeney, for a term of 108 months.
5      That will be followed by a three-year term of supervised
6  release.
7      I will not order a fine.
8      Restitution doesn't apply.
9      There is a $100 mandatory special assessment that has to
10 be imposed in each case.  That will be imposed in your case.
11     Following your release from custody, you will be on this
12 supervised release which you will have certain conditions you
13 have to follow, including reporting to a Probation officer.
14 Your Probation officer will go over these conditions with you
15 and explain them to you.
16     Among the conditions are that you not commit any other
17 violations of law, whether it be federal, state, or local law.
18     That you not illegally possess or use any unlawful
19 controlled substance.
20     That you cooperate in the collection of DNA, as directed
21 by your Probation officer.
22     Do not possess a firearm, ammunition, destructive device,
23 or any dangerous weapon.
24     Submit to one drug test within 15 days of your release
25 from custody; at least two drug tests thereafter, as directed

1   by your Probation officer.

2   Provide to your Probation officer any requested financial
3   information.

4   Participate in a program, whether it be in-patient or
5   out-patient, approved by you Probation officer, for the
6   treatment of narcotic, drug, or alcohol dependency.  This will
7   include testing to determine whether or not you are using or
8   abusing any type of a substance.

9   You will be ordered to not use any alcohol, intoxicant,
10  or drug while you are on this supervised release and while you
11  are going through this treatment.  You will be ordered to make
12  a monthly payment of at least $50 per month to help pay for
13  the cost of these services.

14  And lastly, following your release from custody report in
15  person to the Probation Office in the district where you are
16  released.  Report within 72 hours of your release.  They will
17  get you started on this supervised release and go over these
18  conditions with you.

19  I have accepted the plea agreement that you entered into
20  with the Government in this case, Mr. Sweeney.  As I explained
21  to you back in February -- I am sure Magistrate Judge Ramirez
22  explained to you back in February that as part of your plea
23  agreement with the Government you waived your right of appeal
24  to a large extent in this case.  To the extent that you have a
25  right of appeal that you have left that you wish to exercise,

1  speak with your attorneys about doing that.
2       If you are unable to hire an attorney to represent you on
3  appeal, we will appoint an attorney to represent you at no
4  cost.  We will furnish you copies of the transcript of today's
5  hearing as well as the hearing on February the 18th before
6  Judge Ramirez.  Those will be furnished at no cost.  Speak
7  with your attorneys about exercising what right of appeal you
8  may have left here.
9       Mr. Finstrom, anything else we need to address here?
10           MR. FINSTROM:  Your Honor, the presence report
11 reflects a long addiction history with alcohol and marijuana,
12 and we would ask the recommendation from the Court that he
13 be -- have an opportunity to take the intensive drug treatment
14 program.
15           THE COURT:  And I will make that recommendation.  I
16 am sure your attorneys have explained to you, Mr. Sweeney, my
17 recommendation isn't binding on the Bureau of Prisons.  They
18 will make their own evaluation and make their own decision,
19 but I will be glad to make that recommendation.  Hopefully at
20 some point they will allow you to participate in that while
21 you are serving your time.
22       Anything else, Mr. Finstrom?
23           MR. FINSTROM:  No, Your Honor.
24           THE COURT:  Mr. Leal?
25           MR. LEAL:  Your Honor, there was a preliminary order

1    of forfeiture entered in this case on August 5th, 2014.  I
2    would ask that the Court contain all those items in the
3    judgment and enter a final order as well, Your Honor.
4               THE COURT:  And we will order that those items that
5    are listed in that preliminary order of forfeiture be
6    forfeited to the Government.  That was also part of your plea
7    agreement that you had this forfeiture agreement with the
8    Government.  Those items will be forfeited to the Government.
9    Your interest in those items will be forfeited.
10        Anything else?
11              MR. LEAL:  Nothing further, Your Honor.
12              THE COURT:  Mr. Sweeney, you are remanded to the
13   custody of the Marshal, then, to serve your sentence.  Good
14   luck to you.
15        Court is adjourned.
16                       (End of hearing.)

1    I HEREBY CERTIFY THAT THE FOREGOING IS A
2    CORRECT TRANSCRIPT FROM THE RECORD OF
3    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
4    I FURTHER CERTIFY THAT THE TRANSCRIPT FEES
5    FORMAT COMPLY WITH THOSE PRESCRIBED BY THE
6    COURT AND THE JUDICIAL CONFERENCE OF THE
7    UNITED STATES.
8
9    S/Shawn McRoberts                02/22/2015
10   _____DATE_____
     SHAWN McROBERTS, RMR, CRR
11   FEDERAL OFFICIAL COURT REPORTER